You know the rules, so do you want us to remind you about any rebuttal time? Yes. Thank you, Your Honor. I'd like to reserve five minutes. Five minutes. Okay. Keep an eye on the clock. I'll try to remind you. Okay? May it please the Court. I'm Jan Chilton of Severson & Worson. I represent Nationstar Mortgage. As I'm sure you're well aware, the principal issue in these appeals is whether the reasoning of Durham v. Lockheed extends beyond federal officer removal cases to CAFA removal cases under 1453 so that a case becomes removable for purposes of 1446 and the 30-day window of time for removal reopens or opens for the first time under 1453 when the case becomes removable under that section, even though earlier it might have been removable under a different section such as 1446. Counsel, do you agree that if we don't extend the reasoning of Durham that you lose? Yes. Okay. Appreciate that honest answer. But I shouldn't lose because, as we pointed out in our brief, actually in both of our briefs, the three reasons why Durham was decided the way it was are equally applicable to CAFA removals under 1453. Those three reasons are, first of all, broad construction, secondly, single defendant removal, and third, prevention of gamesmanship. All of those three are covered in our briefs, and I don't want to reiterate what I said in writing because I think I can write better than I can talk. But I do want to turn to what is in the Appellee's briefs, both in this case and Eminent's, on those three arguments. And the first thing I'd like to point out is what's not there. What's not there is any argument on the second or the third of those three reasons, that is to say single defendant removal or prevention of gamesmanship. Neither brief by Eminent's or Jordan says the slightest thing about either of those two reasons for application of Durham, first to 1442 and in our case to 1453. Even if you're right, though, counsel, to what action by Jordan can you point that suggests there was gamesmanship on Jordan's part? Oh, I don't suggest that, Your Honor. We conceded both below and in our briefs here that Jordan herself did not engage in gamesmanship. What I am saying is- You want an advisory opinion, not one that necessarily relates to the facts of this case. No, no. I don't want an advisory opinion, but the possibility of gamesmanship, indeed the probability of it, if one were to rule the other way, is a reason for construing 1446 in the way that Durham did. And that reason applies equally, indeed more particularly, to CAFA removals because Congress specifically in enacting CAFA said that its intent was to prevent exactly that sort of from gaming the system and keeping nationally important class actions in state court rather than in the federal forum that Congress felt they should be in for federalism concerns. To turn to what the appellees actually do say in their briefs, Jordan first of all says don't pay any attention to DART Cherokee's statement about no presumption against removal in CAFA cases because that's just dictum. Well, can I ask you about- Very special dictum when it's from the Supreme Court. Indeed, it is, Your Honor, a point I was about to make, but thank you. And furthermore, it was necessary to the holding, it wasn't dictum because the Supreme Court explained that the district court had ruled the way it did in DART Cherokee, largely because it applied a presumption against removal. And the Supreme Court said, no, that's wrong. Isn't that the key thing that has changed the game for you, is that statement in DART? Because if we didn't have DART, I guess I would have been pretty hostile to your argument because we still would have had in place this presumption against removal, even in CAFA cases, right? Well, I think you can interpret the prior decisions of the Ninth Circuit in a way that's consistent with DART Cherokee. But I agree with you that DART Cherokee definitely, strongly supports our position. But so let's just put, let's put DART aside for a second and let's just look at the state of the case law in our circuit before then. Seems to me it was not a match for the 1442 removal scenario that we addressed in Durham because there, there was this express policy in favor of removal, right? Yes. Our case law prior to DART said in CAFA cases, just the opposite, there's a presumption against removal. So it seems to me if you didn't have DART, I'm not sure you could prevail here. And if that's true, maybe you'll tell me why that's wrong, but if that's true, it seems a little odd that really just one sentence and a citation with a parenthetical in DART could have the effect of overruling an entire line of our circuit's cases. Well, Your Honor, first of all, I would disagree about the prior cases. The prior Ninth Circuit cases come in two varieties. One where it's just pure dictum, one sentence, one liner, strict construction. Those are dictum. They're not precedent. They don't bind this panel and they wouldn't bind any other panel in the Ninth Circuit. But they were the basis of those decisions, were they not, on the facts of those particular cases? No, not, not the cases that I'm talking about. Roth. Which ones are you talking about? Roth and the Attorney General of Nevada versus, I can't remember the other guy's name, and so on. Now, there were a series of earlier cases, Abrigo, for example, where the principle of stricter construction was applied, but in a very particular sense, not across the board strict construction, but rather saying that Congress in CAFA was very knowledgeable about removal procedure, which it felt it wanted to change, and it did so expressly. What about Nevada versus Bank of America? What about Luther versus countrywide home loans? Those are, thank you, you reminded me of the defendant in the Nevada case. Those are cases in which, I believe, the decision turned on other matters. For example, in Nevada versus Bank of America, the question was what's a mass action under CAFA? The strict construction principle really had nothing to do with that, at least as I read the case. Well, I mean, if you're trying to argue that we just were spouting off for no good reason in these cases about there being a presumption against removal in CAFA cases, I'm just not buying that. I'll be honest with you. All we did is that we had a very well-established presumption against removal under the general removal statute. Then when CAFA got enacted, we said the same presumption applies in this context, and we said it over and over again. So I don't think you're going to make a lot of headway, at least with me, on that argument. Is there some other reason why you think the Durham principle would still hold, even under the presumption against removal that we applied in the CAFA cases pre-DART? Well, I think that Congress said in the Senate report that CAFA is supposed to be broadly construed. Indeed, that's what the Supreme Court cited as support for its no presumption against removal statement in DART-Cherokee. And I think both the Supreme Court's statement and Congress's statement about what was intended properly govern here and indeed overrule what you apparently see as— Well, hold on. That Senate report that's quoted in the parenthetical in DART, I mean, our court was well aware of that in all of those prior cases where we nonetheless said there's a presumption against removal under CAFA. True. And the Supreme Court has said that you got it wrong to that extent. In one sentence, and then it offers a citation with a parenthetical. That's what I'm saying. To me, that's a pretty radical change in our circuit's case law that you're attributing to DART. And let me just— Well, all I can say— Let me just join my colleague in—I'm frankly surprised that you put so much reliance on whether the notice triggered federal subject matter jurisdiction under 1332d. It had nothing to do with 1453, did it? Well, of course it did because it was— The section that the Supreme Court was construing in DART is not the section we're talking about here, is it? Well, yes, it is, Your Honor. I think. It's 1446, which is indeed— That's not what they're talking about, is it? I thought it was 1453. Well, 1453 is the substantive removal provision. Right. But what DART-Cherokee was talking about was procedure on removal, namely whether the removal petition has to allege specific facts or be supported by affidavits. That is not governed by 1453. Okay, so you—bottom line is, to answer both Judge Watford's and my question, your whole case relies on your construction of DART. Is that a fair statement? Well, I still maintain that the Ninth Circuit's prior decisions are consistent, but if the Court's not going with me on that, I agree with you that DART—we say DART-Cherokee changed the ballgame. And the Eleventh Circuit, by the way, in the Dudley case, agrees with it. One circuit's already done that, but— Go ahead. I just want to, before you move off that point, I'm just saying put DART out of the equation and let me hear your explanation for why, notwithstanding the presumption against removal that our circuit, up until now, has applied, why does—how could we apply the Durham principle in that context? Do you have an argument on that, or are you just saying, nope, DART changes the ballgame and that's why we win? Well, I certainly say the latter, but I also believe that this circuit was not committed to presumption against removal in CAFA cases, but rather was committed to the principle that if—that bedrock principles governing removal, such as the principle applied in governing whether a defendant includes a cross-defendant or a counter-defendant, those principles apply in CAFA cases because Congress chose not to alter them. Here we're dealing with a situation that Congress could not have dealt with in CAFA because it hadn't even arisen when CAFA was enacted. It—Durham wasn't decided until 18 months after CAFA was—became law, as well as other questions. How much of your argument is based upon the legislative history of CAFCA? A lot. And if DART hadn't come along, your argument would still be the same, that Congress wanted to change the ballgame because of what they thought was an unfortunate way in which class actions were being handled on the state side, and they wanted protection on the federal side. Yes. And spoke quite plainly about both—well, about three things. First, the national importance of class actions to the economy, and that was why the federal government has a very keen interest in removing these cases to federal court. Second, that it wanted its statute to be broadly construed. And third, that it wanted to prevent gamesmanship to—that had been played by plaintiff's lawyers to keep these cases in state court. All three of those are involved in the issue before the court in this case. Now, has the Ninth Circuit taken a look at that by any case that you're aware of, of what that legislative history means? No. So this is really the first time we've looked—whether DART exists or not, the first time we've looked at whether the legislative history changes the game plan. That's my feeling, and that's what I was trying to explain to Judge Watford, but apparently not as eloquently as you did. Oh, not eloquently. I'm just stumbling around on Monday morning, but it just struck me as an interesting point. You want to save— I do. —your time, counsel. Thank you, Your Honor. Very good.  Good morning, Your Honors. Clay Gatins on behalf of the plaintiff, Laura Zamora Jordan. May it please the Court, would you prefer that I address some direct questions from Your Honors directly or just move right into my argument? I'll move into your argument, counsel. Your Honor, as the defense correctly stated, absent Durham, they lose. And the question before this Court is, does the Court's reasoning in Durham apply to as well as federal officer remover under 1442? And the answer to that question is no, and it's no for three very specific reasons. First of all, the history and policy behind federal officer jurisdiction is markedly different than the history and policy behind CAFA. Number two— Well, it's not different if we take the Supreme Court at its word in Dart. It's very similar, in fact. There's this strong desire on Congress's part to see a certain class of cases wind up in the federal court, and so, as the Court in Dart instructed us, the ordinary presumption against removal that normally applies under the general removal statute doesn't apply under CAFA. It seems very similar to the 1442 removal scenario. It's true that both have broadening principles applied to them for removal, and it is true that both of them implicate special circumstances where Congress and the judiciary has expressed an intent and a favor for broadening principles for removal from federal jurisdiction. But when you look at federal officer jurisdiction, and this Court correctly cited it in Durham, citing directly to the Supreme Court, the statement from the Supreme Court in Arizona v. Manny Penney says, the right of removal, federal officer jurisdiction, is absolute for conduct performed under the color of office, and the policy following removal should not be frustrated by a narrow, grudgingly interpretation of 1442. Now, this came out of the history of federal officer removal and the importance of federal officers being able to be in a federal venue. I understand your argument, and I read it carefully in the brief. The thought that struck me was that we may be spending a little too much time on Durham, and maybe we ought to go back and find out what the Congress had in mind doing. And I think the burden that you have here, from my point of view, is that it is clear that Congress wanted to open up a larger venue for class action cases in the federal court. It's clear that the vice is what they were looking for, and if we didn't have Durham, and if we didn't have the Supreme Court giving us dicta or whatever it is, and you went back just to what Congress was trying to do by its legislative history, wouldn't you have a tough burden here where, by applying that they didn't do it when they saw there was diversity, automatically they can't get to what Congress said they wanted to give to the parties. That's the problem I have. So why don't you explain how you get around that legislative history. Yeah, Your Honor, there is a burden, and this is pointed and candid, the burden rests with the defendants on that issue. But as to the issue about Congress and the Senate reports that have been cited, you know, the case law, and Brago's a good example of it, is that Congress made some very specific broadening provisions, and there's four of them that they made. They got rid of the one-year bar. They got rid of the requirement for complete diversity. They got rid of, importantly relevant to Durham, they got rid of the consent of all defendants, and then they allowed for an aggregate amount of $5 million to meet the jurisdictional limit. The Senate reports, including the Senate reports cited by NationStar, very specifically say we don't intend to go any further. There is no intent to broaden 1446 or, importantly, remove the 30-day removal window. And so in answering, Your Honor, the issue is that Congress, under CAFCA, very specifically did engage in broadening principles for very specific reasons, but it didn't go further than that. Well, I know, I understand what you're saying, but there's no CAFCA until there's a jurisdictional amount stated. There's no way that they could use CAFCA until there was a statement made as to the amount of the money. So CAFCA really wasn't involved until it was fully before. But if we accept your reasoning, and maybe we will, if we accept your reasoning, what we're saying is that some act that occurred before that, having to do with diversity, automatically guts CAFCA and what they're trying to accomplish. And I'm not sure that's what the Congress was trying to do. Maybe you could help me with that. Well, and I think that that argument, Congress was intending, to a large extent, to prevent gamesmanship on behalf of the plaintiff bar that was keeping cases out of federal jurisdiction and in state courts that otherwise might be removable. And in doing that, they were directly trying to take away the ability for plaintiffs to style their cases or hide claims. And this Court's reasoning in Durham hit on that issue in the factual circumstances of that case when it looked at, absent the Durham reasoning, the ability of the plaintiffs to prevent federal jurisdiction. Under CAFCA and the subsequent changes that were made in 2005 and under the facts of Durham, plaintiffs simply don't have the ability to mask anything. For example, subject matter jurisdiction is implicated under the requirements of well-pleaded complaints when there's a federal question posed. There's no gamesmanship available to do that. Well, I'm not accusing your client of gamesmanship, obviously, but the person could hold back the actual amount that's at stake and keep CAFCA from occurring, and then if the diversity is there, they automatically lose out on their ability to use CAFCA. Is that what the Congress had in mind? No, and actually, the dark Cherokee decision is instructive on this point. Isn't that the only basis for DART? At least the Supreme Court says that it was the only question before it, which was the amount alleged. To that point, I guess my question is, it seems like your opponent is having—DART is to represent a radical new change in removal jurisprudence. Is it that, or is it quite narrow in what the Supreme Court decided? It is not what they are proposing. It is quite narrow, and it actually bears on Your Honor's question as well. That opinion couldn't be more clear in its statement that it was specifically narrowed to analysis of the sufficiency of the pleadings on a defendant's removal notice. But where it harmonizes with Congress's intent on your question, Your Honor, is that dark Cherokee actually cuts against defendants and doesn't require an express statement of the amount of controversy. Dark Cherokee says there just needs to be a plausible allegation. That is congruent and harmonious with Congress's intent against gamesmanship, and also doesn't defeat CAFA jurisdiction when there's some question about the jurisdictional amount, because dark Cherokee instructs us that all the defendant has to do is make a plausible allegation. Now, if that's challenged, it's still the defendant's burden to support that plausible allegation. But dark Cherokee expressly says that in order to remove properly and timely, which they did not do, you do not need an express statement, just a plausible allegation. Can I follow up on this point? Judge Wallace has referred to legislative history. There are those who have sincere doubts about what that might be and what it represents. Does the Senate Committee report purport on its face to speak for the Senate as a whole? Not in my belief, Your Honor. But it's a minority, a majority kind of a thing, is it not? That's correct, Your Honor. And the other House said something quite different. That's correct, Your Honor. So when we look at the, in quotes, Senate Committee report, what bearing does that have on our construction of the cases? Your Honor, minimal bearing, but not just for the notion of general interpretation of the case, but for the notion of general interpretation of the case itself. And I think that's what the Senate Committee report does. It does not say in it, and there's frankly no reading of it that would indicate that what was intended by Congress was to prevent the purported gamesmanship on behalf of the plaintiff bar, and at the same time allow for gamesmanship on behalf of the defense by providing for, and this is ultimately what the defense's Durham analysis is asking this court to do, by providing multiple opportunities under the same removal statute. And that is a fundamental difference between Durham and here. Because in Durham, even if you accept some of the defense's arguments, it's important to note that under that case, once a separate statute was implicated for removal, because it started out under federal eminence and then facts were disclosed that implicated federal officer jurisdiction. Once that second entirely separate statutory basis was revealed, the 30-day window opened, and that defendant timely removed under that 30-day window. Why are you saying that it's, it seems to me it's just as separate in the CAFA context? Well, it's not under the facts of this case, because the fundamental difference is in the context of this case, there was always subject matter jurisdiction. Federal question. Federal question. Right. And now we're talking about, it's not even just regular diversity, it's CAFA diversity. It's CAFA diversity. Totally different statute. Why isn't it the same as what you were just talking about in the 1442 context? Because when, in this case, as opposed to Durham, the court properly recognized that that defendant, as the case was originally styled under federal eminence, had no real ability to unilaterally remove. It didn't exist. They didn't have it under any statute. And the court recognized that. And so when that unilateral ability to remove presented itself through later disclosure of facts, the court said that they had the opportunity to take it. In this case, the defendant always had the unilateral ability to remove and just didn't. And I understand that doesn't implicate the broader policy discussion, but on the facts of this case, Durham doesn't apply, because Durham didn't have that opportunity, and defendants always have. They elected, either intentionally or unintentionally, not to exercise that opportunity, but that's the distinct difference under Durham. Well, I guess what I find significant is not so much whether one defendant can remove unilaterally, but rather whether the class of cases that we're talking about is one for which Congress has expressed a special preference that they be in federal court if the defendant so desires. And I mean, I read that Senate report statement that the Supreme Court has now sort of given greater prominence to, and it says that CAFA's provision should be read broadly with a strong preference that interstate class actions should be heard in federal court. It seems to me exactly the description we gave federal officer removal cases in Durham under 1442, and I don't . . . I guess I'm having a hard time seeing how you resist the logic of Durham transferring over to CAFA once we have Dart and this emphasis on there being a strong preference on Congress's part that these interstate class actions come into federal court. Again, I've got to come back to the facts of this case. The Durham analysis doesn't apply based on the facts of this case, but to attempt to answer your question, I mean, the overall logic of applying federal officer jurisdiction to CAFA, again, historically and procedurally, they're just different to begin with, and there's nothing in those Senate reports that would indicate that what Congress was truly intending to do was create multiple opportunities for removal within the same statute. But why not? Let's say that under the ordinary diverse removal statute, right? We have a presumption against removal, right? Normally, your client's desire to remain in state court prevails, all things being equal. CAFA class actions are different, though, right? So a defendant, let's say, who's presented with a case that doesn't qualify for CAFA treatment might just decide, eh, just remain in state court, the stakes aren't high enough. But once you amend to make allegations that now bring it within CAFA's domain, why can't a defendant say, oh, well, wait a minute. Now, if we're into the realm of an interstate class action, a case of national importance like Congress had in mind with CAFA, well, now I do want to be in federal court. Why wouldn't Congress have said, yes, you should be given that opportunity now that the case has been transformed into a CAFA class action? That just seems to me to make perfect sense. Well, first, I think that that hypothetical, which bears relevance on eminence, implicates the revival doctrine, which is not my issue here today. But to get to your question— No, no, no. I'm saying that there—correct me if I'm wrong. I understand that your client's original complaint did not qualify for removal under CAFA, right? That's incorrect, Your Honor. Okay, tell me why that's wrong. Because it always pled a subject matter jurisdiction. It always pled a federal question. No, no, no. Listen to the question. Your complaint, as originally framed, did not qualify for removal under CAFA, correct? No, I believe it did. It posed a federal question. So you alleged it was a class action? Correct. It was styled on— And alleged more than $5 million? No, it did not state a specific amount of controversy. But all dark Cherokee says is that it doesn't have to, and that the defendants could have removed on a plausible allegation that it did. And we wouldn't have been able to resist it on that notion. Okay. Well, I'm going to need to hear from the other side. I was under the impression that it was undisputed that your complaint, as originally drafted, would not have allowed for removal under CAFA. Your Honor, I would like to hear from counsel on it. It was always pled on behalf of Laura Zamora and others similarly situated. It clearly implicated class actions on its face from day one. It included a fair debt collection practices action claim on its face from day one. Oh, but you have to allege facts that make it plain that more than $5 million is in controversy. And that's what I'm—I'm having a hard time remembering exactly why I was of this view. And just to educate—just to give you a little bit of background on it, the complaint, as originally filed, did—did state on behalf of other situated—similar situated—did have FDCP claims and did not state a specific amount in controversy. But it was thereafter amended both a first time and a second time to specifically build out and—and designate the members of the putative class in a description of them. And so even if the original complaint back in 2012 didn't, by 2013, well, a year before they made this removal, it definitely defined that class. They had information and had provided discovery that over 10,500 members met that class and they had information that the claim being made on behalf of Laura Zamora included, amongst other things, fees in the amount of $980. Yeah, but that doesn't mean that everybody in the class had damages of that same amount. I mean, we have a—I can't remember the case, but we have a case that's very clear that the defendant—you've got to give enough information in the complaint from which the defendant can basically just do the math. You—you can't expect the defendant to sort of speculate, oh, well, because your client has damages of $900, that necessarily means that everybody else has at least that much in damages. Clawhausen v. BMW, I think, is the case you're referring to. But specifically 1446 provides for other papers, not just the complaint itself, Your Honor. And—and part of that reference to 1446 gets back to the original question I think you're asking, which is Congress always provided a protection for if in the beginning it's not removable on its face, then when it does become removable, there's a—there's a second opportunity to remove it or—and actually, it's first opportunity. That protection was built in specifically by Congress under 1446, retained when they made 1453, and on the facts— So—so when is—when's the first time, in your view, that you—that the defendant had enough information from which the CAFA 30-day window to remove was triggered? Honestly, from the initial complaint, but most certainly by the first amended complaint. Because what was different about that? Because the description of the class was fully defined and fully built out by that, meaning that under the holdings of Clawhausen v. BMW, the defendant had sufficient notice of who the class members would be, and through their other papers and our other papers, they knew the amounts that were being claimed and the vast multitude of people that were affected by the claims. And so Clawhausen doesn't require them to go to the ends of the earth to figure that out, but it doesn't allow them to put their head in the sand, and neither does the concepts behind 1446, or frankly, Durham, allow for that either. That is the type of gamesmanship that's specifically not allowed. And if you—if you were to allow that, not only would you be violating 14— Can you hold on for a second? Somebody have a phone on? Please turn any phones or anything like that off. Can you start? I just couldn't tolerate that noise. If you were to allow that type of behavior, you would be directly violating the safeguard that was built into 1446 that didn't say, just the first time ever, but rather when it became known on other papers. And you would be taking Durham radically farther than its logical conclusion, because what with respect to other papers, abrogate their obligations under Clawhausen v. BMW, and manufacture a second or third or presumably fourth time to make removal under diversity jurisdiction based on a discovery device like a request for admission. And importantly, Dark Cherokee speaks to this issue and says, there's no reason why you need to wait until you issue a request for admission. You just have to have a plausible allegation. And so to hopefully answer your question, Congress's intent is pretty well evidenced in the protection of 1446 that doesn't require one window, but rather allows it to start once there's sufficient information. It strikes me that your all or nothing approach has a problem in another part of removal jurisdiction. If a person pleads that they're a resident of another state, it gives no diversity jurisdiction. We always wink over it because counsel don't know enough to how to ward it. But until they say they're a citizen, we have no jurisdiction. So if they just say a resident, even though they could claim citizenship, they still get to stay in state court. And my guess is that if some on the other side tried to remove it, it wouldn't work because the magic words wasn't said. Doesn't that, if we apply the same approach to this type of removal, it would require somebody to say X amount of dollars, not we have this number of people and if you add it up and you're on a piece of paper, you can do it, but you have to say magic words. That's what we do in diversity jurisdiction. Why wouldn't we do it here? But because I think that that's not consistent with Congress's intent and frankly, it's not consistent with the rules of federal rules of civil procedure. Why do you say it's not what Congress intended? It strikes me that maybe both sides would like to stay in the state court. And so why wouldn't somebody have to make it specific if they want to come see us? Well, I honestly, I think part of it implicates rule 11. I mean, at the outset of the case, the plaintiffs wouldn't necessarily have a reason to know for certain whether the amount of controversy truly did exceed 5 million or not. And so I think that neither Congress nor the jurisprudence has ever, or frankly, ever should require an express exact amount and dark Cherokee echoes that statement and takes it further. It doesn't require a specific amount. It requires in addition to, in addition to that is it has a basic foundation, just like we do in diversity. You have to say you're a citizen again, because I don't know that you could frankly satisfy your obligations under FRCP rule 11. If you, if you, if you just didn't know that it did exceed 5 million, you might well know and should know citizenship and diversity issue, but the amount of controversy, at least in the outset is not known. And I think that that's fundamental to 1446 is right. And, and in, in, uh, in the diversity cases where there's an amount, they say they, they plead it's in a, it's in an amount in addition to a certain amount. But if you don't plead that you have a problem with getting into the court. So why shouldn't we require a specific pleading here as to the amount of controversy rather than a guessing amount? Because I think that it's under removal. I think it's again, well-established that it's the defendant's burden to prove that removal is important. And they've got devices that they could employ that don't require an evidentiary submission under dark Cherokee to establish their, or satisfy their burden to show that removal is proper. I mean, the plaintiff can bring the case where they, where they want to bring it. And so I don't think that burden runs to them. Uh-huh. Well, jurisdiction is a little like being pregnant. You either have it or you don't have it. And, um, and it's very technical and it strikes me that, that it's an issue that I worry about. I understand the analogy. I think you're right. Uh, jurisdiction, you either have it or not, but just like pregnancy, sometimes you're not aware of it. On that, on that auspicious comment. Well, thank you very much for your argument. Thank you. Hopefully we'll have further enlightened argument from counsel in his response. Thank you, Your Honor. Let me address the, the last issue that was brought up because, um, I think it's a distraction. The, um, original complaint here, the amended complaints did not allege an amount in controversy. Clearly, whatever else they alleged, they did not allege an amount in controversy. And below and on the original complaint, you said, right? And the amended complaint, we didn't find no paper was served on us stating an amount in controversy until we served requests for admission. And they responded with an admission that they sought. I think it was 15 million or 25 million. That was two days before we filed our removal petition. Needless to say timely, if, um, the 30 day period opened with the, uh, responses being served, there were three arguments they made below. And by the way, none of them repeated in their merits brief on this appeal, uh, as to why prior to that time, um, there was a sufficient allegation or paper, uh, before us from which we could have drawn the, the amount in controversy. You heard your opponent just say that the first amendment complaint certainly, uh, sketched out the contours of the class. Absolutely. Sketched out the contours of the class. I'm just, in what he was saying was in, in terms that would, would have allowed you to figure out pretty easily that more than $5 million was in dispute. Why is that wrong? That's wrong because Coxhausen says it's wrong. Coxhausen says the defendant's only obligation is to multiply numbers stated in the complaint or other papers. It doesn't have to look at its own records to determine per class member damages, add them up by the number of class members. All we had prior to the, um, response to the request for admission was so many members of the class, not a per class member damage figure. And in the recent, uh, this court's recent cases of Ibarra and, um, oh gosh, I'm blanking on the other name that just came out a little while ago. Um, the court was very clear that the defendant cannot presume that each member of a class suffers the same amount of damages. Well, isn't that where DART does have some impact though, in terms of damages? Well, it, not on when the case becomes removable, but what has to be said about the amount in controversy. Aren't those inextricably intertwined in the sense that it's removable if you know the amount, and if you don't know the amount, it isn't removable, and the Supreme Court says there's flexibility with respect to the allegations on respecting the amount. Isn't that correct? No, I would disagree, Your Honor. Okay. What the Supreme Court said was you don't have to allege evidence. You simply have to state clearly, um, in compliance with the Twombly-Iqbal standard, that more than $5 million is at stake. But it didn't say when you know that more than $5 million is at stake. That's Cuxhausen. Cuxhausen says the defendant can wait until it gets a paper from which it can at least calculate as a mathematical proposition, class member times class member damage equals total. Or, of course, as we had here with the request for admissions, an actual total. To address just quickly a couple of other points that came up. If you will, we've let you go over time, so do that quickly, please. Okay. The Senate report, Your Honor mentioned that. And I wanted just to point out that whatever force it might otherwise have, I think the Supreme Court has given it much more force. It has pointed to that. And if the Supreme Court thinks it's an acceptable basis for construing CAFA, I think this court needs to follow along with that. And as far as masking jurisdiction goes, this complaint and this case illustrate exactly how that could be done. Here we had a complaint that, apart from the caption, which said, and people similarly situated, said zero about class, it alleged one sentence of a federal claim which said defendants have violated the FCRA, or FDCPA, and that was it. Now, a defendant in that situation quite reasonably would not remove because if it removed, the FDCPA claim would likely be dismissed and the rest of the claims, all of which were So, if one were to rule against us in this case, what you'd be doing is compelling defendants in these types of cases to remove cases that otherwise wouldn't be removed, jam the federal courts with cases that are not properly here solely to preserve federal jurisdiction for those cases which Congress said should be here. We think the much more reasonable approach is to wait until the case shows that it should be here and then remove it. Thank you, counsel. Appreciate your arguments. Thank you both. The case just argued is submitted.
judges: Wallace, Smith, Watford